UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ALLEN SANFORD, BRYANT DILL,
IRAIDA BABLITCH and JOE MALLORY,
Individually and on behalf of
all others similarly situated,

                    Plaintiffs,

                                                                    Case No. 17-CV-1071

          v.

PREFERRED STAFFING, INC.,
STAFFWORKS, INC.,
and KLEEN TEST PRODUCTS
CORPORATION,

                    Defendants.

---

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

### INTRODUCTION

The dispositive legal issue in this case is whether pre-shift waiting time (including time spent traveling) is compensable under state and federal law. Both the Supreme Court of the United States and the Wisconsin Supreme Court have held that the answer to this question turns on whether the waiting time is "integral and indispensable" to Plaintiffs' "principal activities"; that is, to the tasks that Plaintiffs were hired to perform. Whether this time somehow benefits the employer is irrelevant.

Despite this clear line of cases, Plaintiffs have attempted to confuse the issue by relying on alleged facts that are, as a matter of law, immaterial: whether workers were required to take the transportation provided by StaffWorks; how long individuals worked with Preferred or StaffWorks before driving themselves to their respective Kleen Test facilities to which they were assigned; how far in advance workers arrived at the Rogers Street Facility to wait for

1

transportation; and how long they waited at the Rogers Street Facility or in the breakroom at the Kleen Test locations. To the extent any of these allegations are disputed—and often those disputes arise from differences between the Plaintiffs' own testimony—the Court need not resolve them. Rather, the Court need only apply the well-established rule that commuting and waiting time are not "integral and indispensable" and thus not compensable work activities.

## FACTS

Preferred Staffing, Inc. ("Preferred") and StaffWorks, Inc. ("StaffWorks") (collectively, "Staffing Defendants") are staffing agencies located at 5325 W. Rogers Street in West Allis, Wisconsin (the "Rogers Street Facility"). (SPMF ¶ 1.)[1] They provide temporary workers to a number of clients, including Kleen Test Product Corporation ("Kleen Test"), which develops, manufactures, and packages household and cleaning products. Kleen Test has four primary locations in Wisconsin, which are located in Port Washington and Mequon. (SPMF ¶¶ 2–4.) Individuals assigned to Kleen Test work primarily on a production line, where they pack finished products into boxes. (SPMF ¶ 6.) Some of the Staffing Defendants' employees also work in the warehouse, bringing the packaged products from the line and wrapping pallets. (SPMF ¶ 7.) These workers are staffed at Kleen Test each day for one of three shifts: first (7:00 a.m. to 3:00 p.m.), second (3:00 p.m. to 11:00 p.m.), or third (11:00 p.m. to 7:00 a.m.) shift. (SPMF ¶ 6.)

None of these facilities can be reached by Milwaukee County's public transit system ("MCTS"), and many of the Staffing Defendants' employees do not have their own means to travel there directly. (SPMF ¶¶ 8–11.) Consequently, StaffWorks provides transportation (the "StaffWorks Bus") to and from these locations from the Rogers Street Facility. (SPMF ¶ 12.) Prior to each shift, the individuals who are to take the StaffWorks Bus check in at the Rogers

---

[1] Defendants' Rule 56 Statement of Proposed Material Facts ("SPMF") is filed along with this Brief.

2

Street Facility.  (SPMF ¶¶ 36, 41.)  This check-in process itself is brief.  (SPMF ¶ 60.)  Only the Staffing Defendants' employees who take the StaffWorks Bus check in at the Rogers Street Facility.  (SPMF ¶¶ 36, 41, 77.)  There are many individuals who have demonstrated that they are able to arrive at their assigned Kleen Test location for the shifts they are scheduled to work, and they are therefore not required to check in at the Rogers Street Facility before each shift. (SPMF ¶¶ 24–26, 98.)  Some often drive themselves, (SPMF ¶¶ 19, 92), though others check in at the Rogers Street Facility to use the StaffWorks Bus if they do not have reliable transportation or if it is simply more convenient or cost-effective than using their own vehicles.  (SPMF ¶¶ 27, 36, 99–101.)

After check in at the Rogers Street Facility, the Staffing Defendants' employees spend the time listening to music, talking to one another, reading, napping, using their phones, or doing nothing.  (SPMF ¶¶ 74–80.)  The same is true for their trip on the StaffWorks Bus, (SPMF ¶ 102), and the time they wait at the Kleen Test facility.  (SPMF ¶¶ 109–113.)  There are no work-related activities to be performed at the Rogers Street Facility, on the StaffWorks Bus, or in the Kleen Test breakroom/cafeteria.  (SPMF ¶¶ 75–77, 102, 111–115.)  After their shifts have concluded, workers leave the Kleen Test facility to either drive themselves home or board the StaffWorks Bus back to either the Rogers Street Facility or one of two other stops the Bus makes before its final destination.  (SPMF ¶¶ 13–17, 116.)

**LEGAL STANDARD**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) ("Rule 56 'mandates the entry of summary judgment ... against a party who fails to make a showing

3

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))). The only matter to be decided by the court upon a motion for summary judgment is, "based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). While the court construes the record "in the light most favorable to the nonmoving party, '[its] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture.'" *Monroe v. Ind. Dep't of Trans.*, 871 F.3d 495, 503 (7th Cir. 2017) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)).

"Only 'genuine' issues of 'material and outcome determinative fact' will defeat an otherwise 'proper' motion for summary judgment." *Zimbauer v. Milwaukee Orthopaedic Grp., Ltd.*, 920 F. Supp. 959, 964 (E.D. Wis. 1996) (quoting *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995)). A factual dispute is considered "'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). The non-moving party, therefore, must present *genuine*, *material* facts, substantiated by evidence in the record, that demonstrate that there are factual issues to be resolved before the legal merits of the case can be considered. *See Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 694 (7th Cir. 2017). If the non-moving party fails to do so, it must establish that "no reasonable jury could find for [the moving party] based on the evidence in the record" in order to overcome summary judgment. *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014).

## ARGUMENT

Defendants are entitled to summary judgment because the time for which Plaintiffs seek compensation is not working hours under federal or state law. During these times, employees

4

were not engaged in any principal activities—the activities that they were employed to perform—nor did they participate in any activity that was so integral and indispensable to the performance of those activities that they are brought within the scope of "work" for which Plaintiffs are entitled to payment. Moreover, Plaintiffs cannot meaningfully distinguish the time that they spent traveling on the StaffWorks Bus from ordinary commuting time, which employers are not obligated to consider as time worked for purposes of state or federal wage and hour law. Finally, whether Defendants "required" employees to engage in pre- or post-shift activities is irrelevant to the legal issue. The Court must consider only whether the activities were integral and indispensable to the principal activities.

I.      **Under the FLSA, Employees are not Entitled to Compensation for Time Spent Performing Pre- or Post-Shift Activities that are not Integral and Indispensable to the Performance of Principle Activities.**

In order to be owed compensation under federal law, employees must establish that the time for which they seek compensation is considered time "worked." However, pre- and post-shift time does not constitute compensable time for purposes of the Fair Labor Standards Act ("FLSA") unless it is integral and indispensable to the employee's job. Time spent commuting to and from the location where employees are performing these job duties is also expressly excluded from coverage under the FLSA, regardless of whether this commute is done via the employee's own vehicle or the employer's (and even when taking the employer's transportation is required). Because there is no evidence by which a reasonable jury could conclude that Plaintiffs are performing activities that are integral and indispensable to those which they were hired to perform while staffed at Kleen Test, their claims fail as a matter of law.

A.      **Pre- and Postliminary Activities do not Constitute Compensable Work.**

5

Employees must be compensated for time during which they are "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). Employees, therefore, must be paid for time "worked." "Work," in turn, has been defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 516 (2014) (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)). This same standard applies for purposes of calculating overtime. *See id.*; 29 U.S.C. § 207(a). Congress has clarified, in the Portal-to-Portal Act ("PPA"), that employers will not be liable for FLSA violations for nonpayment of wages or overtime to employees

> engaged in … (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

*Id.* § 254(a).

"Principal activities" are those that the "employee is employed to perform." *Id.* § 254(a)(1). With respect to other activities—i.e. preliminary and postliminary activities—the Supreme Court has determined that "activities performed either before or after the regular work shift, on or off the production line, are compensable under the [PPA] … *if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed* and are not specifically excluded by [29 U.S.C. §§ 254(a)(1)]." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956) (emphasis added); *see also IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005). An activity is "integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing*, 135 S.

6

Ct. at 517; *see also* 29 C.F.R. § 790.8(c) ("Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance.")

The Supreme Court's decision in *Integrity Staffing* is particularly instructive. There, Integrity Staffing, a temporary staffing agency, hired plaintiffs to retrieve and package products in Amazon.com's warehouses. *Integrity Staffing*, 135 S. Ct. at 515. As part of Integrity Staffing's security procedure, employees were required to undergo a security screen after their shifts ended and before leaving the warehouse. *Id.* The employee-plaintiffs filed a lawsuit against Integrity Staffing, claiming that the roughly 25 minutes that they spent each day waiting in line to undergo and undergoing the security screenings constituted compensable time under the FLSA. *Id.*

The Supreme Court concluded that employees were not entitled to payment for this time even though the screenings occurred on the employer's premises, were required by the employer, and resulted in employees waiting for the screening without compensation before they were permitted to leave the employer's premises. The Court held that "the screenings were not the 'principal activity or activities which [the] employee is employed to perform.'" *Id.* at 518 (quoting 29 U.S.C. § 254(a)(1)). "Integrity Staffing did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment to Amazon customers." *Id.* As the Court observed, "an activity is not integral and indispensable to an employee's principal activities unless it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform those activities." *Id.* These screenings were not an intrinsic element of retrieving products from shelves and packaging them for shipment, as the security screening procedure could have been eliminated entirely without having any effect on the "employees' ability to complete their work." *Id.*

7

Moreover, the Court emphasized that this integral and indispensable analysis is "tied to the productive work that the employee is *employed to perform*," not whether "an employer *required* a particular activity." *Id.* at 519. It recognized that the PPA was intended, at least in part, to rein in the expansive definitions of "work" and "workweek" that were previously adopted by the Court and resulted in "a flood of litigation." *Id.* at 516 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–691 (1946).) It also expressly rejected as overbroad the use of an analysis that "turns on whether the activity is for the benefit of the employer." *Id.* at 519. If these tests could be met by these standards, the Court reasoned, it would engulf the activities that the PPA was intended to address. *Id.*

Because the time for which Plaintiffs here seek compensation occurs before and after their assigned shifts at Kleen Test, the Supreme Court's decision in *Integrity Staffing* controls. Plaintiffs, therefore, are not entitled to compensation for time spent engaging in these activities that occur before or after their shifts at Kleen Test because there is no evidence that the activities at issue are integral and indispensable to the employees' performance of the principal activities.

**B.** **Plaintiffs' Pre- and Post-Shift Time is Noncompensable under the Portal-to-Portal Act.**

Plaintiffs have not alleged that they are owed compensation for time spent performing *principal* activities. Instead, Plaintiffs claim they are entitled to compensation for time they spent checking in at the Rogers Street Facility, waiting for the StaffWorks Bus to depart, commuting to Kleen Test, and waiting at Kleen Test for their shift to start. (*See* ECF No. 26 at ¶¶ 20–21, 23, 26–27, 31–33.) This claim, however, is without merit because none of those activities is necessary for Plaintiffs to perform the duties for which they were hired. Moreover, the time Plaintiffs spent on the StaffWorks Bus is not compensable for the separate and distinct reason that employers are expressly exempted from liability under the FLSA for not paying

8

employees for time spent commuting to and from the place where they perform the principal activities. *See* 29 U.S.C. § 254(a)(1).

Because the acts of waiting at the Rogers Street Facility and Kleen Test locations, and of riding the StaffWorks Bus to and from Kleen Test, are neither integral nor indispensable to the performance of Plaintiffs' job duties, that time is not compensable under the FLSA.

### 1. Plaintiffs Spent Pre-Shift Time at Both the Rogers Street Facility and the Kleen Tests Locations Waiting for the Workday to Begin, not Engaging in Compensable Principal Activities.

Following *Integrity Staffing*, Plaintiffs' time from check in at the Rogers Street Facility to the start of the shift at Kleen Test is compensable only if it is spent performing activities that cannot be dispensed with in order for Plaintiffs to perform their principal activities. *Integrity Staffing*, 135 S. Ct. at 517. Here, for purposes of the issue before the Court, Plaintiffs were employed by the Staffing Defendants for the purpose of working on assembly production lines or in the warehouse at one of Kleen Test's southeast Wisconsin locations.[2] (SPMF ¶¶ 6–7.) The tasks that they perform while on the line or in the warehouse are the principal activities in which they engage while staffed at Kleen Test. (SPMF ¶ 6–7); *see also* (SPMF ¶¶ 75–77, 102, 111–112) (noting that employees do not perform any work at the Rogers Street Facility, on the StaffWorks Bus, or in the breakroom/cafeteria at Kleen Test).

---

[2] Plaintiffs attempt to divorce themselves from this analysis by asserting that they were employed to be staffing employees. (ECF No. 46 at 7); (ECF No. 68 at 2.) The fact that they were employed by a staffing agency instead of by Kleen Test, and could have been assigned to other clients, does not alter the fact that, for the purposes of the issues here, they were employed to perform work on the assembly line and warehouse at Kleen Test. (SPMF ¶¶ 6–7.) The plaintiffs in *Integrity Staffing*, who were employed to retrieve products and package them for shipping to Amazon customers, were not employed by Amazon, but instead employed by Integrity Staffing, a staffing agency. *Integrity Staffing*, 135 S. Ct. at 515, 518. Regardless, the Court concluded that the employees' principal activities consisted of retrieving and packaging products, and that the time they spent waiting to undergo and undergoing security screening was not integral and indispensable to these activities. *Id.* at 518–19.

Plaintiffs could perform these tasks regardless of whether they waited at the Rogers Street Facility, took the StaffWorks Bus, or waited at Kleen Test prior to the start of their shift. This is not merely hypothetical; the undisputed evidence is that many of Staffing Defendants' employees did dispense with one or all of these activities and still performed work at Kleen Test. For example, many employees known colloquially as "regulars" drive themselves directly to the Kleen Test facility without ever reporting to the Rogers Street Facility at all. (SPMF ¶¶ 24, 26, 92–93.) Other regulars chose to take the StaffWorks Bus, but would arrive just minutes before it left for Kleen Test; thus dispensing with the check-in process and waiting time. (SPMF ¶¶ 26, 36–37); *see also IBP*, 546 U.S. at 42 ("In short, we are not persuaded that such waiting—which in this case is two steps removed from the productive activity on the assembly line—is 'integral and indispensable' to a 'principal activity' that identifies the time when the continuous workday begins. Accordingly, we hold that [the PPA] excludes from the scope of the FLSA the time employees spend waiting to don the first piece of gear that marks the beginning of the continuous workday.").

The fact that Plaintiffs spent this time waiting at the Rogers Street Facility and their assigned Kleen Test locations before they began their shift does not entitle Plaintiffs to compensation for this pre-shift time. The Supreme Court emphasized this point in *Integrity Staffing*, which courts have subsequently applied to circumstances that further illustrate why Plaintiffs' claim must fail. In *Bridges v. Empire Scaffold, L.L.C.*, the plaintiffs were hired to erect scaffolding at a refinery expansion project with shifts starting at 7:00 a.m. each day. 875 F.3d 222, 223 (5th Cir. 2017). The employer "required its employees to take buses . . . to the refinery on a first-come, first-serve basis between 5:00 a.m. and 6:15 a.m." *Id.* The ride took between 20 and 30 minutes, and missing the bus meant that the employee would not work that

day because the employer did not allow any other means of access to the work site. *Id.* After arriving at the site, Empire required no other activities while the employees waited for their shift to start. *Id.* at 223–24. Applying *Integrity Staffing*, the Fifth Circuit denied plaintiffs' claim for compensation for pre-shift waiting because the waiting time "was neither tied to nor necessary to" their principal activity of "erecting and dismantling scaffolding." *Id.* at 226.[3] *See also Jones v. Hoffberger Moving Servs. LLC*, 92 F. Supp. 3d 405, 411 (D. Md. 2015) ("Plaintiffs are not entitled to compensation for time spent waiting at the warehouse before traveling to jobsites. Crucially, Defendants 'could have eliminated the [wait time] altogether without impairing the employees' ability to complete their work,' and thus Plaintiffs' wait time is not *indispensable*.") (quoting *Integrity Staffing*, 135 S. Ct. at 518)).

Here, as in *Bridges*, Plaintiffs' pre- and post-shift activities are not compensable. Plaintiffs, when assigned by the Staffing Defendants to work at Kleen Test, were employed to pack products into boxes, ensure the products were securely and properly packaged, to box and palletize these products, and to perform similar work on an assembly line or at the warehouse at the Kleen Test facilities. (SPMF ¶¶ 6–7.) Like Integrity Staffing, which "did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment to Amazon customers," Staffing Defendants did not employ these employees to wait for their shifts to start or to take the Staffworks Bus. *Integrity Staffing*, 135 S. Ct. at 518. That the Staffing Defendants' employees spent time waiting while physically located at the Rogers Street Facility and Kleen Test is irrelevant in resolving whether this time is

---

[3] The district court denied plaintiffs' claims for compensation for time spent on the bus, holding that such time was also excluded by the Portal-to-Portal Act. *See Adriano-Favela v. Empire Scaffold, L.L.C.*, No. 1:13-CV-377, 2016 WL 10988589, at *5 (E.D. Tex. Mar. 2, 2016), *report and recommendation adopted*, 2016 WL 1168141 (E.D. Tex. Mar. 24, 2016), *aff'd sub nom. Bridges v. Empire Scaffold, L.L.C.*, 875 F.3d 222 (5th Cir. 2017). Plaintiffs there did not appeal this judgment. *Bridges*, 875 F.3d at 227 n.4.

11

compensable.  Because Plaintiffs cannot establish that they were employed for the purposes of waiting at either the Rogers Street Facility or the Kleen Test locations—or that doing so was an integral and indispensable part of securing, packaging, or boxing household and cleaning products—their claim that they are entitled to compensation for this time fails.

### 2. Time Spent Traveling on the StaffWorks Bus is Noncompensable Because Commuting is not Integral and Indispensable to the Performance of Plaintiffs' Principal Activities.

In addition to expressly excluding pre- and postliminary activities from FLSA liability, the PPA also excludes the following:

> walking, riding, or traveling to and from the *actual place of performance* of the principal activity or activities which such employee is employed to perform … [*that*] *occur either prior to the time* on any particular workday at which such employee commences, or *subsequent to the time* on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a) (emphasis added).  Similarly, travel at the beginning and the end of the workday "includes the employee's travel on the employer's premises until he reaches his workbench or other place where he commences the performance of the principal activity or activities, and the return travel from that place at the end of the workday."  29 C.F.R. § 790.7(e). These interpretive statements also provide examples of travel, performed outside the workday, that is generally considered to be a pre- or postliminary activity:  "[R]iding on buses between a town and an outlying mine or factory where the employee is employed [and] ... riding on buses or trains from a logging camp to a particular site at which the logging operations are actually being conducted."  29 C.F.R. § 790.7(f).  Thus, time spent commuting to and from the place where employees perform their principal activities is not compensable.  29 U.S.C. § 254(a)(1).

Furthermore, the fact that employees travel via employer-owned transportation instead of a personal vehicle or public transportation is immaterial.  In other words, merely that the vehicle

12

used for this commuting time is owned by the employer instead of the employee (or, in the case of public transit, the city or county) does not alter the nature of the commute or the conclusion that this time is not compensable. *See e.g.*, *Griffin v. S & B Eng'rs & Constructors, Ltd.*, No. 1:11-CV-60, 2012 WL 12897156, at *8 (E.D. Tex. Mar. 15, 2012), *aff'd*, 507 F. App'x 377 (5th Cir. 2013) ("[T]he Tenth Circuit . . . [has] averred that the language of § 254(a)(1) was to be applied strictly and that requiring a certain mode of transportation does not transform the period spent traveling into compensable travel time. Accordingly, [the employee's] travel time is not compensable solely because [the employer] required its employees to travel by bus."); *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994), *abrogated on other grounds by Integrity Staffing*, 135 S. Ct. 513 ("That [the employer] owned the buses … does not matter under the statute."); *Dolan v. Project Constr. Corp.*, 558 F. Supp. 1308, 1310–11 (D. Colo. 1983) (mem.) (concluding that the 20 to 30-minute ride from the employer's check-in location to the designated worksite via the required bus service was not compensable).

Plaintiffs cannot distinguish their commutes on the StaffWorks Bus from the illustrative cases above, nor is there evidence to support an assertion that these commutes were anything other than ordinary, noncompensable travel time. Moreover, Plaintiffs similarly cannot maintain that their commutes were integral and indispensable to the performance of their principal activities. Consequently, Plaintiffs' claim for compensation for time spent commuting on the StaffWorks Bus fails and judgment must be granted in Defendants' favor.

**II.    The Analytical Framework by Which Plaintiffs Assert Their Claims are to be Evaluated are not Supported by Statute, Regulation, or Judicial Precedent.**

**A.    Plaintiffs' Emphasis on What May Have Been "Required by" Defendants is Misplaced, as an Inquiry Into Whether an Action was "Required" is Not Relevant.**

13

As previously noted, the Supreme Court has emphasized that the relevant inquiry is *not* whether the activity at issue was mandated by the employer. *See supra* 6–9. In fact, the Court expressly overturned the Ninth Circuit's decision, stating that "[t]he Court of Appeals erred by focusing on whether an employer *required* a particular activity." *Integrity Staffing*, 135 S. Ct. at 519. Instead, the focus is placed only on whether the activities in question are principal activities or activities that are integral and indispensable to the performance of those principal activities. *Id.* at 517–19.

Whether checking in at the Rogers Street Facility, taking the StaffWorks Bus, or waiting at the Kleen Test locations were "required" by or performed "for the benefit of" or "under the control of" Defendants is irrelevant in determining whether these activities are compensable. *See* (ECF No. 26 at ¶¶ 19–21, 27, 33); (ECF No. 46 at 2–3, 5–7); (ECF No. 68 at 2, 4, 6, 8); (ECF No. 87 at 9); (ECF No. 90 at 2–3); *see also Integrity Staffing*, 135 S. Ct. at 519.[4] Instead, in order to succeed in their claim for wages owed for this time, Plaintiffs must establish that they are engaged in activities that are integral and indispensable to their principal activity of packaging and boxing household and cleaning products on an assembly line or transporting and palletizing such products within a warehouse. (SPMF ¶¶ 6–7.) Because Plaintiffs cannot make such showing, their claims cannot succeed.

Critically, opt-in Plaintiffs concede that some employees did, in fact, drive themselves to their assigned Kleen Test facilities. (SPMF ¶¶ 30–31, 87–88.) The overwhelming evidence from other declarants and deponents confirms that *many* employees drove themselves or got a ride to these locations. (SPMF ¶¶ 26, 33, 92–93.) Staffing Defendants' employees who did so

---

[4] Although the Court does not expressly articulate this point, the *Integrity Staffing* employees are necessarily under the "control" of Amazon and/or Integrity Staffing during the time they are required to wait in line to undergo and while undergoing the security screening procedures; the Court nevertheless concluded this time was not compensable. *See* 135 S. Ct. 513; *see also* (ECF No. 46 at 2); (ECF No. 68 at 2, 8); (ECF No. 87 at 9.)

were not required to check in at the Rogers Street Facility, but instead simply arrived, ready to work, at their assigned location. (SPMF ¶ 26.) The number of Staffing Defendants' employees who had such an arrangement, how long they were employed by the Staffing Defendants prior to driving themselves, or why they drove themselves is immaterial for purposes of this Motion. The evidence is undisputed that many of Staffing Defendants' employees performed work at Kleen Test's facilities—the same work that was done by Plaintiffs—who did not check in to the Rogers Street Facility, travel to Kleen Test on the Staffworks Bus, or wait in the break room at Kleen Test prior to the commencement of their shift. (SPMF ¶¶ 26, 30–33, 92–93.)

Because these employees were fully capable of effectively performing the principal activities on the line and in the warehouse, it must follow that those activities in which they *did not* engage *are not* integral and indispensable to the performance of those duties. To be sure, it would be illogical to conclude that a particular activity is absolutely necessary for an individual to carry out a task when it is undisputed that there are many who carry out those same tasks without engaging in that same activity. *See Integrity Staffing*, 135 S. Ct. at 518 ("[A]n activity is not integral and indispensable to an employee's principal activities unless it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform those activities."). Staffing Defendants *could have* eliminated altogether the employees' wait at the Rogers Street Facility, the Staffworks Bus ride to Kleen Test's facilities, and the wait at those Kleen Test locations without any effect on the employees' ability to perform their job duties.[5]

---

[5] It should be noted, too, that if Staffing Defendants were to eliminate its transportation program, a number of employees would be forced to find alternative work, as many do not have a means to travel beyond the locations serviced by the MCTS. (SPMF ¶¶ 8–11, 100–101.)

Despite Plaintiffs' bare assertion to the contrary, just because *some* of the Staffing Defendants' employees (i.e. those without their own means of transportation) would not be able to be staffed at Kleen Test without using the StaffWorks Bus to get there does not render their use of the Bus integral and indispensable to the performance of their principal activities. (ECF No. 46 at 2– 3, 7); (ECF No. 90 at 4.) Staffing Defendants, like many other businesses in the staffing industry, provide transit to its clients' hard-to-access suburban facilities as a benefit to both its employees and its clients. (SPMF ¶ 18.) Nonetheless, this transportation offering does not make such time spent traveling (or waiting time before and after traveling) integral and indispensable elements of the principal activities that Staffing Defendants *employees* are employed to perform. If it did, commuting time to work should always be compensable, as many employees' physical presence at an office, client site, or other location where they perform their principal activities is an integral and indispensable part of the job. But such pre-shift commuting time is expressly excluded by the PPA. 29 U.S.C. § 254(a)(1). Furthermore, Plaintiffs' assertion (made in connection with their bid for certification) that "production at Kleen Test would be slowed" without the use of such transportation is completely unsupported, and in any event, not a relevant standard or consideration for this Court to consider when assessing whether an activity is integral and indispensable to the performance of a principal activity. (ECF No. 46 at 7.)

Plaintiffs' case is entirely different from, for example, the "donning and doffing" cases, which have established that time spent donning and doffing required protective gear of a particular job is generally compensable under the FLSA. *See, e.g.*, *IBP*, 546 U.S. 21 (concluding that the time employees spend donning and doffing PPE to perform meat packing duties was compensable, though the time the employees spent waiting before donning was not); *Steiner*, 350

16

U.S. 247 (determining that time spent donning and doffing PPE in order to handle toxic and caustic chemicals, as well as the time spent showering post-shift, was compensable, as these actions are integral and indispensable to the employees' principal activity of work related to automotive battery manufacturing). In these cases, the employees *could not* have performed their jobs without getting changed into or putting on certain protective gear and taking it off at the end of the shift. This gear was therefore a *necessary* part of the job because they could not perform their principal activities—those which they were hired to do—without this gear. Plaintiffs, on the other hand, cannot support a claim that engaging in the pre-shift activities for which they now seek compensation (waiting and travel) are essential such that they would be unable to perform their job duties on an assembly line or in the warehouse at Kleen Test without participating in those activities.

As noted above, Plaintiffs have not asserted, nor is there evidence to support, that the time employees spent commuting on the StaffWorks Bus is different than any other commute; instead, they claim that they are entitled to compensation for time spent traveling merely because, as they alleged, some of Staffing Defendants' employees were obligated to take this form of transit. *See supra* 12–13; (ECF No. 26 at ¶ 27); (ECF No. 68 at 6); (ECF No. 87 at 6–8); (ECF No. 90 at 2–4.) Again, whether this is a requirement is not synonymous with whether it is compensable; the requirement is not what makes any pre- or post-shift activity compensable. *Integrity Staffing*, 135 S. Ct. at 519.

> **B.** **Pursuant to Federal Law, Employees' "Workday" Does Not Begin Until they First Engage in a Principal Activity and Ends When they Complete their Principal Activities.**

Because Plaintiffs cannot show that the time for which they seek to be compensated was spent engaging in an activity that is integral and indispensable to their principal activities, they

must show that the time spent at the Rogers Street Facility, on the StaffWorks Bus, and in the Kleen Test breakroom/cafeteria was part of their "workday." Because Plaintiffs did not engage in any activities that are considered principal activities that would trigger the start of their workday prior to the beginning of their shifts at Kleen Test, they are not entitled to compensation for any such time.

"Workday" is not a defined term, but can be "roughly described as the period 'from whistle to whistle.'" 29 C.F.R. § 790.6(a). As that term is used in the PPA, it has been interpreted to mean, "in general, the period between the commencement and completion on the same workday of an employee's principal activity or activities. It includes all time within that period whether or not the employee engages in work throughout all of that period." 29 C.F.R. § 790.6(b); *see also IBP*, 546 U.S. at 36 ("The 'whistle to whistle' reference does reflect the view that in most situations the workday will be defined by the beginning and ending of the primary productive activity."). This is commonly known as that continuous workday rule. *See IBP*, 546 U.S. at 28–29. The PPA did not alter the pre-existing analysis under the FLSA with respect to the computation of compensable time *within* the workday; it only applies to time spent engaging in activities before the commencement of the first or after the conclusion of the last principal activity. 29 C.F.R. § 790.6(a) ("The principles for determining hours worked within the 'workday' proper will continue to be those established under the Fair Labor Standards Act without reference to the Portal Act, which is concerned with this question only as it relates to time spent outside the 'workday' in activities of the kind described in [29 U.S.C. § 254].").

Plaintiffs cannot establish that their workday began prior to the commencement of their shifts at Kleen Test such that the continuous workday rule would apply because they were not engaged in a principal activity (or an activity that is integral and indispensable to that principal

18

activity) before the time they started their shifts at Kleen Test. *See supra* 9–13. Similarly, there is no evidence that demonstrates that employees were engaged in any work prior to that time. First of all, there is no work for employees to perform while at the Rogers Street Facility. (SPMF ¶¶ 75–77.) Instead, employees listen to music, talk to one another, use their cell phones, smoke outside, walk to the nearby convenience store, or do nothing during this time. (SPMF ¶¶ 78–80.) Likewise, employees perform no work while on the StaffWorks Bus and instead listen to music, talk amongst themselves, use their cell phones, sleep, or do nothing. (SPMF ¶ 102.) Once employees arrive at their respective Kleen Test locations, they wait in the breakroom/cafeteria for their shift to begin and generally spend this time eating, napping, or using their cell phones. (SPMF ¶¶ 109, 111–114.) Simply put, the only work that employees perform occurs when they are on the line or at the warehouse at the Kleen Test facilities once their shifts have started.

In a strained attempt to suggest that their workday begins prior to that time, Plaintiffs assert that employees must meet at the Rogers Street Facility to "receive[] instructions, have all their protective gear and uniforms, … [and] go through [certain] procedures." (ECF No. 46 at 7); *see also* (ECF No. 46 at 4–5); (ECF No. 68 at 3–4, 15); (ECF No. 87 at 6–8.) Notwithstanding the fact that these actions are not integral and indispensable to the performance of Plaintiffs' duties, *see supra* 14–17, these tasks are insufficient to signal the beginning of Plaintiffs' workday and do not require that Plaintiffs are compensated for the minimal time these tasks may have taken. Employees were given minimal instruction at the Rogers Street Facility prior to their first shift, (SPMF ¶ 106), but beyond that, they merely received occasional reminders about ensuring that they have their protective goggles with them and that they could use their cell phones only in the breakroom/cafeteria at Kleen Test. (SPMF ¶¶ 103–105.) This is

19

hardly the type of "instruction" that employees are required to receive prior to and as a requirement of the performance of their principal activities. *See* 29 C.F.R. § 785.38.

For example, in *Dolan*, the court granted the employer's motion for partial summary judgement, in which it asserted that the employees' claims for travel time to and from the job site was not compensable pursuant to the PPA. 558 F. Supp. at 1309. The employees were required to check in at the main camp between 5:40 a.m. and 6:15 a.m. before boarding the employer's buses to take them to the job site, which was approximately 20 to 30 minutes away, to begin work at 7:00 a.m. The employees, for their part, argued that the time spent on the bus constitutes compensable time, in relevant part, because they sometimes received information during the bus ride. *Id.* at 1311. The court rejected this argument, stating that no work was "performed during the approximately 20 minute bus ride to the work area," and that plaintiff-employees received information on the bus "only on selected days," and that such information "consisted of mimeographed sheets used to inform employees of changes in policies and procedures and advise them of progress made in the overall job." *Id.* The court concluded that "this intermittent receipt of directions and information is not an integral part of plaintiffs' principal activities and cannot be considered work of consequence" and that there was no evidence to suggest that the "plaintiffs actually read or even felt obligated to read these mimeographed sheets while on the bus." *Id.*

Like the employees in *Dolan*, Plaintiffs receive little to no instruction at the Rogers Street Facility, on the StaffWorks Bus, or pre-shift at the Kleen Test locations. In fact, many employees observed that no instructions are given during these times. (SPMF ¶¶ 102, 105.) At most, the evidence suggests that any directions that were provided were given to or intended for the Staffing Defendants' employees prior to their first shift. (SPMF ¶¶ 104–106.) Furthermore,

that many Staffing Defendant employees did not report to the Rogers Street Facility, use the StaffWorks Bus, or arrive at the Kleen Test facilities prior to the commencement of their shift illustrates that these instructions were not essential. (SPMF ¶¶ 19, 23–24, 26, 87–88, 92–93.) Staffing Defendants' employee testimony demonstrates that returning individuals did not pay attention to any such announcements, as they would typically be listening to music, talking with one another, or sleeping. (SPMF ¶¶ 78–80, 102, 111, 113.)

Because the evidence does not establish that the employees' "workday" commenced— thereby triggering the continuous workday rule—prior to the time their shift at Kleen Test began, Plaintiffs' claims that they should be compensated for any time spent waiting at the Rogers Street Facility, on the StaffWorks Bus, or in Kleen Tests' breakrooms/cafeterias is without merit.

### C. Whether Plaintiffs are "Engaged to Wait" or "Waiting to be Engaged" is not the Relevant Analysis under this Set of Circumstances.

Plaintiffs have argued that they are "engaged to wait" from the moment they check in at the Rogers Street Facility and thus are entitled to compensation from that time until their shift begins at Kleen Test. (ECF No. 68 at 9–11); *see* 29 C.F.R. § 785.15. This claim is without merit because, as in *Integrity Staffing*, the question is whether the activities are "integral and indispensable" to the tasks Plaintiffs performed at Kleen Test, not whether they were engaged to wait. *Integrity Staffing*, 135 S. Ct. 513 (concluding that those activities must be integral and indispensable to the principal activities in order for employees to be entitled to compensation). *See also IBP*, 546 U.S. at 40–42 (holding that time spent waiting to start putting on protective gear is not compensable because that time was "two steps removed from the productive activity on the assemble line" and thus not integral and indispensable to the principal activities).

In neither *Integrity Staffing* nor *IBP* did the Court evaluate whether the plaintiffs were "engaged to wait" because those cases, as here, involve time either before the start of the

principal activities or after those activities have concluded. Under the PPA, employees are not entitled to compensation for pre- or postliminary activities that "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases." 29 U.S.C. § 254(a). "Workday," in turn, "is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *IBP*, 546 U.S. at 28 (quoting 29 C.F.R. § 790.6(b)).

### 1. Unlike Plaintiffs, Employees who are "Engaged to Wait" are Employed, at least in Part, for the Purpose of Waiting.

The "engaged to wait" test is used to determine whether an employee who is not *actively* performing any work-related duties is nonetheless entitled to compensation for that working time because the waiting, itself, is a necessary part of that position. *See Roland v. Unity Ltd. P'ship*, No. 07-C-1103, 2010 WL 1286722, at *3 (E.D. Wis. Mar. 29, 2010) ("An employee is engaged to wait when idle waiting is a part of the job he is asked to work. For example, a firefighter might spend 20 hours of a 24 hour shift doing nothing more than watching television, washing his car, eating and sleeping, but because he is 'engaged to wait' his entire time is compensable. Waiting is part of the job."). This analysis is also used to determine whether time spent "on call" is compensable. *Dinges v. Sacred Heart St. Mary's Hosps., Inc.*, 164 F.3d 1056, 1056–57 (7th Cir. 1999) (citing *Armour & Co. v. Wantock*, 323 U.S. 126 (1944))).

There is a common theme that runs through the cases in which the "engaged to wait" versus "waiting to be engaged" analysis is used: the employees have begun their workday, whether they are at the employer's place of business or at home on call, and are waiting to be called upon to engage in a principal activity. Being "on-call" or "engaged to wait" means there *could* be work to do at some indeterminate time, but perhaps not this moment. The waiting, itself, is part of the job that they are compensated to perform. *See Bridges*, 875 F.3d at 228

(rejecting a comparison to the Supreme Court's "engaged to wait" cases because there "the firefighters were employed to wait in order to respond to fires" whereas the plaintiffs in *Bridges* "were not employed to wait for their shifts to begin at 7:00 a.m."); *see also In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 852 F.3d 601, 614 (6th Cir. 2017) (rejecting use of the "engaged to wait" analysis because it is used only when the employee's "workday has begun and he is anticipating some further principal activity, such as a stenographer waiting to take dictation or a firefighter waiting for a call.").

Plaintiffs here did not begin their workday until they began their shifts at Kleen Test. *See supra* 17–22. Consequently, this Court must evaluate Plaintiffs' clams using the Supreme Court's analysis in *Integrity Staffing* and need not evaluate whether Plaintiffs were "engaged to wait" or "waiting to be engaged."

> ### 2. Employees who are "On Call" are Employed in Positions and Perform Duties Materially Dissimilar to Plaintiffs.

Plaintiffs also allege that the Staffing Defendants' employees are "on call" while at the Rogers Street Facility, thereby suggesting that the "engaged to wait" analysis is appropriate. (ECF No. 26 at ¶ 19); (ECF No. 46 at 5–7.); (ECF No. 68 at 9–11); (ECF No. 87 at 19–20.) This is simply not true. Not only is there no evidence that they were *employed by the Staffing Defendants for the purpose* of being on call (i.e. by working shifts that were designated "on call"), but the work they performed shares no similarities to the work performed in those positions for which courts are called to evaluate an employee's on-call status. *See, e.g.*, *Dinges*, 164 F.3d 1056 (resolving whether EMTs, who were required to arrive at the hospital within 7 minutes of receiving a page while on-call, were entitled to full compensation for time the spent on call but performing no work); *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737 (6th Cir. 2000) (determining whether a funeral director, who was responsible for answering phone calls after-

hours during his on-call shifts, was entitled to compensation for the time he spent waiting while on call); *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128 (10th Cir. 2000) (deciding whether electronic technicians, who were required to respond to alarms in its employer's buildings within 15 minutes while on call, should be compensated for their on-call time).

Plaintiffs here have not begun their workday while waiting or traveling and are not "anticipating some further principal activity." *In re Amazon.com*, 852 F.3d at 614. Critically, unlike the fire fighter, who waits at the firehouse for an indefinite time until he is called to perform the principal activity of putting out a fire, Staffing Defendants' employees who report to the Rogers Street Facility wait until set times when they board a bus and subsequently start their assigned shifts. (SPMF ¶¶ 5, 36–37, 81–84.) This is two steps removed from the principal activity of packaging products on an assembly line or in the warehouse at Kleen Test. *See IBP*, 546 U.S. at 42. Moreover, unlike the electronic technicians in *Pabst*, who were disciplined if they failed to respond within the allotted timeframe, *Pabst*, 228 F.3d at 1131, Staffing Defendants' employees who check in but do not show up to board the StaffWorks Bus receive no such discipline. (SPMF ¶¶ 42, 70, 85–86.) The only consequence to Staffing Defendants' employees who fail to report is simply that they will not be sent out to work for that shift. (*Id.*) Furthermore, working on any given shift on any given day is not required of the Staffing Defendants' employees, and they always had the opportunity to reject an offer from Staffing Defendants regarding the potential to work without consequence. (SPMF ¶¶ 90–91, 94–98.)

The Supreme Court has articulated the relevant inquiry that courts must undertake when evaluating whether employees are to be compensated for activities in which they engage outside of their shift. *Integrity Staffing*, 135 S. Ct. 513. This is a wholly separate and distinct inquiry from the analysis in which courts partake in determining whether an employee is entitled to

compensation when he or she is on call and engaged to wait as part of his or her workday. Because Plaintiffs seek compensation with respect to time outside of their workday, the *Integrity Staffing* framework controls and is the only analysis that is applicable in this action.

## III.     Plaintiffs' State Law Claims Fail for Similar Reasons.

Although the Supreme Court of Wisconsin has not addressed this specific issue directly, recent case law illustrates that it would adapt the analysis set forth in *Integrity Staffing* and conclude that the time for which Plaintiffs seek compensation constitutes noncompensable pre- and postliminary activities.  Moreover, like the federal equivalent, Wisconsin's wage and hour laws do not dictate that employees are entitled to compensation for time spent commuting. Accordingly, Plaintiffs' claims under state law also fail for the reasons set forth above.

### A.     The Supreme Court's Reasoning with Respect to Plaintiffs' Claims under the FLSA is Applicable to the Analysis of Plaintiffs' Claims under Wisconsin Law.

The Supreme Court of Wisconsin has stated that, when "the Wisconsin administrative regulations at issue . . . are substantially similar to federal regulations, federal cases may assist in [its] analysis."[6] *United Food & Commercial Workers Union, Local 1473 v. Hormel Foods Corp.*, 2016 WI 13, ¶ 65, 367 Wis. 2d 131, 876 N.W.2d 99.  The court noted, at the outset, that whether an employee is entitled to compensation depends on when the workday begins and ends. *See id.* ¶ 40 ("Compensable time is defined in the regulations in terms of a 'workday.'"). "Workday," in turn, "is defined as the 'period between "the time on any particular workday at which such employee commences their principal activity or activities" and "the time on any particular workday at which they cease such principal activity or activities."'" *Id.* (quoting Wis. Admin. Code DWD § 272.12(1)(a)2).  The court then turned to the meaning of the term

---

[6] Wisconsin also has regulations related to "wait[ing] to be engaged" versus "engaged to wait".  Wis. Admin. Code DWD § 272.12(2)(b).  However, for the reasons set forth above, this is not the relevant analysis.  *See supra* 22–23.

Case 2:17-cv-01071-JPS   Filed 05/24/19   Page 25 of 31   Document 98

"principal activity or activities" in concluding that the time employees spent donning and doffing protective gear was, in fact, compensable because those activities were integral to the employee's principal activities of canning shelf-stable food products. *Id.* ¶¶ 13–15. The protective gear that employees wear is required in order to meet federal food and safety regulations. *Id.* ¶¶ 7, 16–19. In other words, these employees could not legally perform their job without donning this protective gear.

The *Hormel Foods* court rejected the employer's argument that the Wisconsin Court of Appeals' decision in *Weissman v. Tyson Prepared Foods, Inc.*, 2013 WI App 109, 350 Wis. 2d 380, 838 N.W.2d 502,[7] creates a conflict with the Supreme Court's decision in *Integrity Staffing*. *Id.* ¶ 70. Instead, the Court noted that *Integrity Staffing* "support[s] the proposition that just because the employer requires employees to perform an activity that benefits the employer does not automatically render that activity integral and indispensable to an employee's principal work activities, and thus compensable." *Id.* ¶ 71. The court further acknowledged that *Integrity Staffing* "declare[s] that an activity is *integral* and *indispensable* to the principal activities if it is an intrinsic element with which the employee cannot dispense if he or she is to perform the employee's principal activities." *Id.*

With respect to the determination as to what constitutes a principal activity, Wisconsin's parallel regulation is "substantially similar to federal regulations addressing the phrase 'principal activity or activities.'" *Id.* ¶ 43 n.13; *see also* Wis. Admin. Code DWD § 272.12(2)(e)1. ("The term 'principal activities' includes all activities which are an integral part of a principal activity. . . . Among the activities included as an integral part of the principal activity are those closely related activities which are indispensable to its performance."). The *Hormel Foods* court

---

[7] The *Weissman* court concluded that the time employees spent donning and doffing was "an integral part of a principal activity," and therefore, compensable. 2013 WI App 109, ¶ 2.

concluded that "[c]leanliness and food safety are 'intrinsic element[s]' of preparing and canning food at the Hormel canning facility. The clothing and equipment is integral and indispensable to the performance to the employees' job function (principal work activity) of preparing canned food." *Hormel Foods Corp.*, 2016 WI 13, ¶ 60.

### 1. The Pre- and Post-Shift Time for Which Plaintiffs Seek Payment is not Compensable Under State Law.

The Supreme Court of Wisconsin has recognized that *Integrity Staffing* is in harmony with and reflects the same outcome—based on parallel regulations—as Wisconsin's state law precedent. Accordingly, activities that employees perform, outside of their workday, that are not integral and indispensable to the performance of the principal activity are not compensable. *See Hormel Foods Corp.*, 2016 WI 13, ¶¶ 65–71, 78. In determining parties' rights, obligations, and liabilities under state law, federal courts are to construe the law as that state's highest court has done, if it has spoken on the issue. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001). Therefore, as is the case under the FLSA, Plaintiffs are not entitled to compensation under Wisconsin law for time other than during their shifts at Kleen Test.

As explained in greater detail above, the Staffing Defendants' employees were employed to perform certain tasks on an assembly line and in the warehouse at Kleen Test facilities, specifically, packaging and boxing cleaning and other household products. (SPMF ¶¶ 6–7); *see supra* 9–12. The act of checking into and waiting at the Rogers Street Facility, riding the StaffWorks Bus, and waiting at Kleen Test breakrooms/cafeterias are not "intrinsic element[s] with which [Plaintiffs] cannot dispense if [they are] to perform [their] principal activities." *See Hormel Foods Corp.*, 2016 WI 13, ¶ 71. The mere fact that many of Staffing Defendants' employees did, in fact, carry out these job duties at Kleen Test without waiting at the Rogers Street Facility, taking the StaffWorks Bus, or waiting in the Kleen Test breakroom/cafeteria

proves that these acts are not *necessary* to the performance of Plaintiffs' principal activities. *See supra* 14–16. Because Wisconsin law, like federal law, focuses the applicable evaluation on whether an activity is integral and indispensable the execution of the principal activities—which does not include waiting and travel time—Plaintiffs' state law claims fail.

> **2. Wisconsin's Regulations Regarding Commuting Time are Similar to those Under Federal Law and do not Require that Employees be Compensated for Normal Commuting Time.**

Like the FLSA, Wisconsin's wage and hour statute does not dictate when or under what circumstances employees are entitled to compensation for travel time; however, the regulations clarify that "whether or not time spent in travel is working time depend[s] upon the kind of travel involved." Wis. Admin. Code DWD § 272.12(g)1. Employees who travel "from home before their regular workday and return[] to their home at the end of the workday [are] engaged in ordinary home to work travel which is a normal incident of employment. . . . Normal travel from home to work is not work time." *Id.* § 272.12(g)2. By contrast,

> Time spent by an employee in travel as part of their principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the workplace is part of the day's work . . . .

*Id.* § 272.12(g)5.

The Supreme Court of Wisconsin has recognized that these regulations "draw a sharp distinction between [normal travel] and travel that is a principal activity (for which an employee earns wages). For example, traveling between jobsites[8] is clearly compensable . . . . However, . . . the DWD says the time spent driving between home and a worksite is not

---

[8] The only "jobsite" in the case before this Court are Kleen Test's facilitates, as they are the only locations at which employees perform any work. (SPMF ¶¶ 6–7, 75–77, 102.)

28

compensable." *Kieninger v. Crown Equip. Corp.*, 2019 WI 27, ¶ 18, 386 Wis. 2d 1, 924 N.W.2d 172. The *Kieninger* court denied the employees' claims that the mere fact that transporting tools, which were necessary for the performance of their principal activities of repairing forklifts, transformed what would be normal commuting time into compensable working time. *Id.* ¶¶ 21–25. Importantly, the court confirmed that travel in a company-owned vehicle does not render this travel time compensable: "Whether the employee is in a personal or a company vehicle, he is doing the exact same thing, and no one disputes that the time at issue would not be compensable." *Id.* ¶ 20. In the end, it declined to accept that "[c]onveying company tools from an employee's home to his jobsite, without more, makes his travel time 'an integral part of a principal activity.'" *Id.* ¶ 25.

Much like the employees in *Kieninger*, Staffing Defendants' employees who take the StaffWorks Bus are using company-owned transportation. As Wisconsin's high court has concluded, though, this travel time constitutes normal commuting time that is not an integral and indispensable part of Plaintiffs' principal activities of packing and boxing household and cleaning products. (SPMF ¶¶ 6–7.) In order to assemble to board the StaffWorks Bus, the Staffing Defendants' employees necessarily must meet at a central location, and they therefore meet at the Rogers Street facility to accomplish this. (SPMF ¶ 77.) They do not meet at the Facility in order to receive instructions, gather tools, or perform work, as contemplated by the regulations. *See* Wis. Admin. Code DWD § 272.12(g)5; (SPMF ¶¶ 75–76, 103–106.) Nor do they perform any work on the StaffWorks Bus itself (or at any point prior to their assigned shift). (SPMF ¶ 102.) Indeed, if there were any work-related activities performed prior to the beginning of the employees' shifts at Kleen Test, as Plaintiffs allege, such activities necessarily could not be considered integral and indispensable to the performance of the Staffing Defendants'

29

employees' principal activities because numerous of these individuals bypass such activities on a daily basis. (SPMF ¶¶ 19, 23–24, 26, 92–93.) Indeed, it is undisputed that many workers travel directly from home to the Kleen Test facility to which they are assigned, arriving immediately prior to the start of their assigned shift. For those who take the StaffWorks Bus, including the "regulars" who check in beforehand, (SPMF ¶¶ 36–37, 77), the Rogers Street Facility is no more a "meeting place" than a bus stop on the MCTS line.

Accordingly, the Staffing Defendants' employees' travel from the Rogers Street Facility to Kleen Test and back[9] and accompanying waiting time, therefore, constitutes normal commuting time for which they are not entitled to compensation under Wisconsin law.

## CONCLUSION

For the reasons set forth above, Plaintiffs cannot establish that the time for which they seek compensation is considered part of the "workday" or is spent engaging in principal activities under either federal or state law. Plaintiffs, therefore, are not required by law to be compensated or given credit for purposes of overtime calculations other than for time spent working during their shifts at Kleen Test, for which it is undisputed they have been fully compensated. Accordingly, Defendants respectfully request that this court grant its Motion for Summary Judgment.

---

[9] Employees may also depart the StaffWorks Bus at a location that is closer to their home if it is more convenient than riding back to the Rogers Street Facility. (SPMF ¶¶ 13–17.)

Dated: May 24, 2019

SEAN M. SCULLEN
State Bar No. 1034221
STEVEN M. KRUZEL
State Bar No. 1086539


s/ Sean M. Scullen
_____
  QUARLES & BRADY LLP
  411 East Wisconsin Avenue, Suite 2350
  Milwaukee, WI 53202-4426
  Phone: 414.277.5000
  Facsimile: 414-271-3552
  Email: sean.scullen@quarles.cm
          steven.kruzel@quarles.com

Attorneys for Defendant, Kleen Test
Products Corporation

s/ Robert S. Driscoll
Robert K. Sholl
WI State Bar ID No. 1016881
rsholl@reinhartlaw.com
Robert S. Driscoll
WI State Bar ID No. 1071461
rdriscoll@reinhartlaw.com
Michael J. Gentry
WI State Bar ID No. 1091204
mgentry@reinhartlaw.com
Attorneys for Defendants Preferred
Staffing, Inc. and StaffWorks, Inc.

Reinhart Boerner Van Deuren s.c.
1000 North Water Street,
Suite 1700
Milwaukee, WI 53202

Mailing Address:
P.O. Box 2965
Milwaukee, WI 53201-2965
Telephone: 414-298-1000
Facsimile: 414-298-8097

31