# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ALLEN SANFORD, BRYANT DILL, IRAIDA BABLITCH, and JOE MALLORY,<br><br>     Plaintiffs,<br><br>v.<br><br>PREFERRED STAFFING INC., STAFFWORKS INC., and KLEEN TEST PRODUCTS CORPORATION,<br><br>     Defendants. | Case No. 17-CV-1071-JPS<br><br><br>**ORDER** |

    Plaintiffs were hired by Defendants Preferred Staffing, Inc. and Staffworks, Inc. (collectively, "Staffing Defendants") to work at various factories around Milwaukee. One such facility is operated by Defendant Kleen Test Products Corporation ("Kleen Test"), and Plaintiffs' work there forms the heart of this case. Plaintiffs allege that Defendants have failed to pay them for the entirety of their compensable work time in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Wisconsin state law, Wis. Stat. § 109.03 & Wis. Admin. Code DWD § 272.12. (Docket #26). Following Magistrate Judge David E. Jones' departure from the bench, this case was subsequently reassigned to this branch of the Court.

    According to Plaintiffs, they were required to arrive at the Staffing Defendants' facility hours in advance of their work on the factory floor. They would arrive and check-in, and then had to wait idly until they were assigned to a particular building and assembly line at the Kleen Test facility. Once they received an assignment, Plaintiffs were given safety goggles and

a short orientation about the work to be performed (if it was their first shift at Kleen Test). Plaintiffs then boarded buses for the facility. The Staffing Defendants did not guarantee work, however; not everyone who showed up could be given a work assignment. Those people had to leave empty-handed.

Once at the Kleen Test facility, Plaintiffs were required to wait in the cafeteria until the shift started. There they received more detailed instructions about the work and their work assignments. Plaintiffs then worked and were paid for an eight-hour shift. Afterwards, Plaintiffs waited, sometimes for up to an hour, for a Staffing Defendants' bus to take them back to the staffing facility. In total, Plaintiffs claim that they were engaged for at least eleven hours in a workday, but were only paid for eight.[1]

Defendants have moved for summary judgment, arguing that the time spent outside Plaintiffs' formal shift was not compensable. To understand their position, we must begin more than seventy years ago. The FLSA was enacted in 1938 to establish a minimum wage and to require overtime compensation for hours worked in excess of forty in a given work week. 29 U.S.C. §§ 206 & 207. The FLSA did not define "work," however, and so it was left to the courts to do so. In the mid-1940s, the Supreme Court decided that "work" included any exertion, whether or not burdensome, on behalf of an employer, and that it also encompassed all time during which the employee was required to be on the employer's premises or on

---

[1]These are the relevant facts viewed most favorably to Plaintiffs. This includes the Court generously overlooking Plaintiffs' numerous failures to comply with the rules of procedure regarding factual briefing. *See* (Docket #116 at 9–10) (Defendants' reply brief detailing those failures).

duty. *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–91 (1946).

A flood of litigation followed, with workers asserting their right to be paid for various pre- and post-shift activities. *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 31–32 (2014). Congress sought to stem the tide by enacting the Portal-to-Portal Act in 1947, which exempted from the FLSA time spent on

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

To assess the scope of these rules, one must define "principal activity." A principal activity is considered that which the employee is employed to perform. *Id.* (a)(1). Principal activities include not just the discrete task the employee was hired to do, but also those tasks "which are an integral and indispensable part of the principal activities." *Steiner v. Mitchell*, 350 U.S. 247, 253 (1956); *see also IBP, Inc. v. Alvarez*, 546 U.S. 21, 29–30 (2005). Something becomes integral and indispensable for the principal activities when "it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing*, 574 U.S. at 33.

Whether an activity is integral to an employee's work is a fact-dependent inquiry, but it is for courts and not juries to decide that threshold

question. *Llorca v. Sheriff, Collier Cty., Fla.*, 893 F.3d 1319, 1324 (11th Cir. 2018); *see also Renfro v. City of Emporia*, 948 F.2d 1529, 1536 (10th Cir. 1991) ("[W]here there are undisputed facts as to whether a certain activity is a compensable principal activity or a non-compensable preliminary or postliminary task, the Court may appropriately grant summary judgment."). Courts require employees to be compensated for donning and doffing uniforms and protective gear, *IBP, Inc.*, 546 U.S. 28–30, post-shift washing to remove potentially toxic chemicals, *Steiner*, 350 U.S. at 251–53, and undergoing security screenings, receiving preshift briefings, and managing necessary equipment, *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1277–83 (10th Cir. 2020). *See also Meeks v. Pasco Cty. Sheriff*, 688 F. App'x 714, 717 (11th Cir. 2017) (police officer picking up his patrol car and driving to his patrol zone was integral to police work). By contrast, courts have found that time spent waiting to don and doff protective gear, *IBP, Inc.*, 546 U.S. at 40–42, waiting idly before the beginning of a shift, *Bridges v. Empire Scaffold, L.L.C.*, 875 F.3d 222, 226–27 (5th Cir. 2017), and changing in and out of equipment for meal breaks, *Mitchell v. JCG Indus., Inc.*, 745 F.3d 837, 840–42 (7th Cir. 2014), is connected but not intrinsic to the employee's principal activities, and thus not compensable work. *See also Smith v. Allegheny Tech., Inc.*, 754 F. App'x 136, 139–40 (3d Cir. 2018) (riding to and from a factory in company vans, for forty-five minutes each way, was not integral to the factory work).

In addition to those opinions, *Integrity Staffing* itself provides apt instruction in this case. In that case, the Supreme Court held that a post-shift security screening for Amazon warehouse workers was a non-compensable postliminary activity. 574 U.S at 35–37. It found that the employees were there to retrieve and package items. *Id.* at 35. Going

through a security screening had nothing to do with that task. *Id.* Indeed, the screenings could have been entirely eliminated without any effect on the employees' work. *Id.*

The Court noted that the "integral and indispensable test is tied to the productive work that the employee is *employed to perform*," not "whether an employer *required* a particular activity." *Id.* at 36 (emphasis in original). If the reverse were true, then this would undermine the very purpose of the Portal-to-Portal Act which, for example, sought to eliminate FLSA liability for time spent walking from the factory gate to the workstation. *Id.* Additionally, "[a] test that turns on whether the activity is for the benefit of the employer is similarly overbroad." *Id.*

The Court finds that Plaintiffs' activities before and after their formal factory shifts are, like the security screening in *Integrity Staffing*, FLSA-exempted pre- and postliminary activities. Plaintiffs were employed to work on an assembly line. They were not employed to wait for a shift or take bus rides to or from the factory. Defendants could have eliminated all of the complained-of "work" time without any effect on Kleen Test's production. Things certainly may have been less efficient—Plaintiffs would have needed to get to the factory on their own, or perhaps Kleen Test would have simply needed to hire employees directly rather than use a staffing agency—but that is not part of the Supreme Court's definition of a principal activity.

It does not matter that Defendants required Plaintiffs to wait before and after their shifts, take buses to and from the factory, and receive some orientation instructions prior to beginning work. It is also irrelevant whether Defendants accrued some benefit from these requirements; indeed they did, or else the requirements would not be in place. Again, a required

activity is not the same as "the productive work that they employee is *employed to perform.*" *Id.* at 36. Indeed, none of the time for which Plaintiffs seek compensation was productive in any way.[2] Plaintiffs are like the *Anderson* workers who demanded pay for the time spent walking from the timeclock to the assembly line. If the Portal-to-Portal Act is to have any meaning, this cannot be considered compensable time. *IBP, Inc.*, 546 U.S. at 41 ("We discern no limiting principle that would allow us to conclude that the waiting time in dispute here is a 'principal activity' . . . without also leading to the logical (but untenable) conclusion that the walking time at issue in *Anderson* would be a 'principal activity' . . . and would thus be unaffected by the Portal-to-Portal Act.").

Plaintiffs' arguments to the contrary are meritless. First, Plaintiffs analogize their position to a mechanic whose usual job is to fix cars, but was one day asked to work on payroll. Should the mechanic be paid for the payroll work although he was hired to fix cars? Absolutely, and contrary to Plaintiffs' belief, this is consistent with *Integrity Staffing* and the cases cited therein. The payroll work is the mechanic's alternative principal activity at the time, because it is the productive, economically valuable work he was being asked to do by his employer. It was not "part of the ingress and egress process," of the job, but rather "constitute[d] the actual 'work of consequence performed for an employer[.]'" *Integrity Staffing*, 574 U.S. at 38 (Sotomayor, J., concurring) (quoting 29 C.F.R. § 790.8(a)).

Second, Plaintiffs claim that this result ignores the Staffing Defendants' business model. Plaintiffs note that they would cease to

---

[2]At least in an economic sense. While at the Staffing Defendants' facility, Plaintiffs were free to read, socialize, and otherwise relax before the workday began.

function, at least in their current mode, if they did not require their employees to check-in so early and take buses to and from the facilities they service. Third, and in the same vein, Plaintiffs contend that the preliminary processes required by the Staffing Defendants are indeed integral to the principal activities they were hired to perform. Without those processes, the Staffing Defendants could not guarantee their clients an appropriate number of workers, and they could also not assign the workers to the clients where the workers were needed.

Plaintiffs' view again conflates the requirements an employer imposes upon its employees with the actual work the employees are meant to perform. Plaintiffs also forget that assessing exemption from the FLSA based on whether an activity benefits an employer is "overbroad." *Id.* at 36. The Staffing Defendants' onerous time requirements perhaps make them a less desirable employer than some other companies that hire workers directly. This bears only upon Plaintiffs' decision to seek employment with the Staffing Defendants. It does not transform any time spent waiting, travelling, and orienting on Defendants' behalf into compensable work time. That is, instead, non-compensable ingress and egress time.

Plaintiffs' final argument is that their waiting time should be considered work because they were "engaged to wait," or employed (in part) to sit and wait for their work assignment, rather than "waiting to be engaged," which is merely pre-work idle time. *Skidmore v. Swift & Co.*, 323 U.S. 134, 135–37 (1944). Case law has developed to distinguish between these two states, but it is not particularly helpful to the case at hand. The typical examples of being engaged to wait are firefighters and employees who work on-call shifts. Plaintiffs' work is nothing like those jobs. Instead, this argument is a thinly veiled recasting of Plaintiffs' other arguments

regarding what should be considered integral to their principal work activity. The Court rejects it for the same reasons.

Finally, the Court turns to Plaintiffs' Wisconsin wage claim. Wisconsin's applicable regulations are substantially similar to the federal ones, and so Wisconsin permits the use of federal wage cases to help interpret them. *United Food & Comm. Workers Union, Local 1473 v. Hormel Foods Corp.*, 876 N.W.2d 99, 109 (Wis. 2016). Plaintiffs focus their arguments on their own interpretation of the Wisconsin regulations. They offer no reasoned basis to conclude that Wisconsin courts have a different view of "principal activities" than the U.S. Supreme Court. In fact, the Wisconsin Supreme Court has expressly addressed *Integrity Staffing* and found the U.S. Supreme Court's analysis consistent with its own. *Id.* at 109–12. The Court will, therefore, dismiss the Wisconsin wage claim on the same bases described above.

In sum, Plaintiffs have not shown that they were denied pay for any time that they were legally required to be paid. Defendants' motion for summary judgment on liability must, therefore, be granted, and this action dismissed. The Court will deny as moot a motion for summary judgment filed by Kleen Test on whether it was a joint employer of Plaintiffs, and thus jointly liable for Plaintiffs' damages. (Docket #92). Also moot are two motions filed by Plaintiffs seeking reconsideration of orders issued by Magistrate Judge Jones. (Docket #124 and #125). The Court notes that those motions would, in any event, be denied on their merits. Magistrate Judge Jones' rulings are consistent with the view of the law and the facts taken in this Order. Plaintiffs' motions, reduced to their core, reflect merely a disagreement with that view. Reconsideration is not a substitute for an

appeal. *Tokh v. Water Tower Ct. Home Owners Ass'n*, 327 F. App'x 630, 631 (7th Cir. 2009).

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment regarding liability (Docket #97) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Kleen Test Products Corporation's motion for summary judgment regarding joint employer status (Docket #92) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiffs' motions for reconsideration (Docket #124 and #125) be and the same are hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 20th day of March, 2020.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge